# EXHIBIT C

```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLUMBIA


------------------------------x
VALERIE JONES,                :
                              :
                              :
          Plaintiff,          :
                              :
                              :
          v.                  : No. 05-1187(RMU)
                              :
UNIVERSITY OF THE DISTRICT    :
OF COLUMBIA BOARD             :
OF TRUSTEES et al.,           :
                              :
          Defendants.         :
------------------------------x
```

                                    Washington D.C.
                          Thursday, October 12, 2006

Deposition of

ROBERT T. ROBINSON

a witness, called for examination by counsel for Plaintiff pursuant to notice and agreement of counsel, beginning at approximately 11:10 a.m. at 4200 Connecticut Avenue, NW, Washington D.C., before Janet Evans-Watkins of Beta Court Reporting, notary public in and for the District of Columbia, when were present on behalf of the respective parties:

```
 1    APPEARANCES:
 2        On behalf of Plaintiff:
 3            SUSAN L. KRUGER, ESQUIRE
              Alan Lescht and Associates, PC
 4            1050 15th Street, NW, Suite 220
              Washington D.C.  20036
 5            (202) 463-6036
 6        On behalf of Defendants:
 7            DANA K. DeLORENZO, ESQUIRE
              Assistant Attorney General
 8            Civil Litigation Division
              Office of the Attorney General
 9            for the District of Columbia
              441 4th Street, NW, Sixth Floor South
10            Washington D.C.  20001
              (202) 724 6515
11
      ALSO PRESENT:
12
              Robin C. Alexander
13
14
15
16
17
18
19
20
21
22
```

1   she was off on sick leave, to that extent she

2   was calling in reference to returning back to

3   work.

4       Q   What did she tell you regarding

5   work?

6       A   She told me she had -- I think -- I

7   think she said she was clear -- but her

8   doctor had restrictions to come back to work

9   and she was -- concerning -- could she come

10  back to work on light duty.

11      Q   What did you tell her?

12      A   At that time, I -- she had

13  indicated that her doctor had released her to

14  come back to work.  And she had some -- she

15  wanted me to write her doctor and let her

16  doctor know that I was able to re-employ her.

17  I -- at first, I advised her that she

18  should -- at first, she had to bring me some

19  doctor's certification to let me know her

20  limitations and so forth.

21          So she did not -- I don't think she

22  ever went into the restriction, coming back

1  to duty, because she did say she was on

2  medication.  And those medications sometimes

3  made her drowsy.  You know, unbalanced.

4      Q   What kind of certificate did you

5  want her to bring in?

6      A   Well, it's a doctor's certificate

7  that would tell me that she is able to do

8  certain things and unable to do other things.

9      Q   What did she tell you?  What was

10 her response to that?

11     A   Well, I -- I don't recall any

12 response in terms of what she was going to do

13 and what she wasn't going to do.

14     Q   Was that the end of the

15 conversation?

16     A   I believe that was pretty much the

17 conversation.

18     Q   Did you have any further

19 conversations with Ms. Jones?

20     A   I don't recall having any other

21 conversation.

22     Q   Did you have any conversations

1        MS. KRUGER:  I have no further
2   questions.
3        MS. DeLORENZO:  Just a couple
4   questions for you.
5        EXAMINATION BY COUNSEL FOR DEFENDANT
6        BY MS. DeLORENZO:
7   Q    Earlier, Ms. Kruger had asked you
8   about some of the duties involved with being
9   a security officer at UDC.  I believe you had
10  said that there was patrolling, traffic
11  details, assisting other officers.  Can you
12  please describe some of the other physical
13  duties involved with being a security
14  officer?
15  A    Well, the first -- the first of the
16  demands is walking.  Climbing.  We have
17  buildings that one must traverse steps.  We
18  have about 25 acres that one must traverse
19  during the tour of duty.  We have 11
20  buildings that they must go in and out
21  besides the perimeter patrol.  We have three
22  parking garages -- I believe five surface

1    parking lots -- and they all are not on plane

2    level.  Officers have to patrol all area

3    aspect of the campus, and that's very

4    demanding.

5         Q    Are the officers also required to

6    effectuate arrests if the situation warrants?

7         A    Absolutely must be in physical

8    condition to effect arrests -- to protect

9    themselves as well as protect the community.

10        Q    Are security officers -- do you

11   know if they are required to have firearms or

12   handguns on their person?

13        A    Persons are supposed to have

14   firearms.  Those that qualify must wear

15   firearms.

16        Q    So in a situation where a security

17   officer may have to effect an arrest, would

18   there be possibly running involved?

19        A    Yes, ma'am.

20        Q    Would a security officer have to be

21   able to physically subdue an individual that

22   may be under arrest?