UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Valerie Jones, )<br>)<br>Plaintiff. )<br>)<br>v. )<br>)<br>University of the District of Columbia )<br>Board of Trustees, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 05-1187 (RMU) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is the rare Title VII case where the EEOC issued a Determination finding in favor of the plaintiff, Valerie Jones, on her claims of disability discrimination because the Defendant would not allow her back to work unless she had no medical restrictions at all.

## INTRODUCTION

In early July 2003, Ms. Jones, a police officer with the University of the District of Columbia ("UDC"), called her supervisors, Lt. Philip Morton and Vice President Robert T. Robinson and told them that her doctor released her to work light duty. Lt. Morton and Mr. Robinson told Ms. Jones that there was no light duty. Mr. Robinson told Ms. Jones that she could not come back to work unless she could work without any restrictions. Several weeks later her workers compensation claims adjuster sent her a copy of a memorandum from her supervisor, Lt. Morton. The memorandum confirms that Ms. Jones had requested light duty and that there were no light duty assignments available for her.

Since July 2003, UDC has failed to provide Ms. Jones with an accommodation

and has failed to engage in the interactive process even though UDC allows other police officers to work light duty.

On September 28, 2004, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a determination letter finding that the University of the District of Columbia ("UDC") had violated the Americans With Disabilities Act when it denied Ms. Jones a reasonable accommodation that met her medical restrictions and instead told her that she would not be allowed to return to work without a full medical release.

## STATEMENT OF FACTS

On September 28, 2004, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a determination letter finding that the University of the District of Columbia ("UDC") had violated the Americans With Disabilities Act when it denied Ms. Jones a reasonable accommodation that met her medical restrictions and instead told her that she would not be allowed to return to work without a full medical release (Jones Declaration, para. 1; **Exhibit 1**, Determination letter).

Ms. Jones was hired by UDC in 1988 as a police officer (Jones Declaration, para. 2).

The EEOC found that she is disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act because she suffers from chronic arthritis in her shoulder, neck and knees, bursitis in her hip, and various chronic back conditions. She has pain and spasms when walking, sitting, bending, and lifting. She cannot reach above her right shoulder level without pain. When she tries to kneel, she falls face down. She has anxiety attacks. Her left and right knees give out sometimes. Her left knee causes her a great deal of pain on a daily basis. She has difficulty climbing steps. She has spasms in her

right shoulder, lower back, neck and knees. She also has arthritis in her left hand which affects her writing. Her doctor has placed restrictions on the amount of time she can spend walking or standing. She is not allowed to do any lifting or carrying. Her disabilities substantially limit one or more of her major life activities including walking, standing, bending, lifting, reaching. She has been in pain since December 17, 1999. She depends on her spouse to assist her with her personal care depending on the severity of my pain. Her disability is permanent (Jones Declaration, para. 5).

Ms. Jones sustained three separate injuries while working for defendant. On December 17, 1999, she was assaulted by a male coworker. She suffered multiple injuries including a rotator cuff tear to her right shoulder (Jones Declaration, para. 6).

In April 2001, the male coworker who assaulted Ms. Jones in 1999 followed her onto an elevator despite a restraining order against him preventing him from having any contact with her. Ms. Jones had an anxiety attack and fainted. She fell and landed on concrete. She suffered multiple injuries. Her shoulder and back were reinjured by the fall (Jones Declaration, para.7).

On November 14, 2002, Ms. Jones was detailed by her supervisor to escort a contractor to the roof top of buildings 32-42. When she went to step down on a concrete barrier she fell and sustained multiple injuries to her right shoulder, back, knees and right hip (Jones Declaration, para 8).

Ms. Jones received workers' compensation for each of these injuries (Jones Declaration, para. 9).

Following her injuries in 1999 and 2001, UDC accommodated Ms. Jones' disabilities by allowing her to work light duty. She did limited patrolling by foot and

vehicle, issued notices of parking infractions, performed traffic details, escorted staff and students to and from their vehicles, responded to incidents, assisted coworkers with incidents, answered telephones, prepared incident reports, evaluated police equipment, worked in the registration area, and worked in communications (Jones Declaration, para. 10).

While Ms. Jones was working light duty she completed law enforcement training programs and received a certificate of appreciation for her contribution to the Martin Luther King Celebration (Jones Declaration, para. 11, **Exhibit 2**).

Ms. Jones did not carry a firearm at work after the assault in 1999 (Jones Declaration, para. 12).

Ms. Jones was on light duty at the time of her injury on November 14, 2002 (Jones Declaration, para. 13).

The procedure for requesting light duty at UDC was as follows: If an officer was out on sick leave and could go back to work under restrictions, the officer would call her immediate supervisor, advise the supervisor that she was able to come back to work light duty and go over the doctor's restrictions with the supervisor. After the officer returned to work, she would give the doctor's note to her supervisor (Jones Declaration, para. 14).

Ms. Jones followed this procedure when she returned to work on light duty following the assault in 1999 and the fall in 2001 (Jones Declaration, para. 15).

In February 2003, while she was recovering from the November 2002 injury, her doctor recommended that she have gastric bypass surgery (Jones Declaration, para. 16).

On February 24, 2003, Ms. Jones requested advance leave of 240 hours so that she could undergo gastric bypass surgery on February 27, 2003. (Jones Declaration, para. 17; **Exhibit 3**, Memorandum from Jones to Capt. Morton dated February 24, 2003).

Ms. Jones did not speak to anyone at UDC about returning to work or needing to work light duty until July 2003 (Jones Declaration, para. 18).

The EEOC found that Ms. Jones was released to work with restrictions beginning on or around July 2, 2003 (Jones Declaration, para. 19; **Exhibit 1**, Determination letter).

In or about July 2003, Ms. Jones' physician, Phillip H. Omohundro, M.D., advised her that she could return to work light duty as of July 3, 2003. (Jones Declaration, para. 20; **Exhibit 4**, July 2, 2003 note from Dr. Omohundro).

Dr. Omohundro stated in his notes from her office visit on July 2, 2003, that Ms. Jones could not walk or stand more than two hours intermittently in an eight hour day and that I could do no lifting or carrying (Jones Declaration, para.; **Exhibit 5**, Dr. Omohundro's dictated notes, July 2, 2003).

The EEOC found that when Ms. Jones called UDC to say that she could return on light duty status, she was told there were no light duty assignments available and that there never had been light duty assignments within the University Police Department The EEOC also found that Mr. Robinson told me that I could not return to work without a full release (Jones Declaration, para. 22; **Exhibit 1**, Determination letter). The facts underlying this finding are as follows:

In early July, 2003, Ms. Jones called Lt. Glenn Adams and advised him that she could return to work light duty. Lt. Adams handed the telephone to Lt. Morton who told her that she needed to call UDC Vice President of Public Safety and Emergency

5

Management, Robert T. Robinson. Lt. Morton said that a notice came out that there was no light duty and that he gave the notice to human resources (Jones Declaration, para. 23; **Exhibit 6**, Letter from Lt Adams).

Ms. Jones called Mr. Robinson and told him she had been released to work light duty and explained what her doctor had stated in his note regarding her restrictions. Mr. Robinson told her that there was no light duty available, that there never had been light duty and that documents indicating that she could work light duty were unacceptable. Mr. Robinson stated that she could not return to work unless she had no medical restrictions (Jones Declaration, para. 24).

Mr. Robinson told Ms. Jones that she had to go back to my doctor and get a note stating that she could work without restrictions and without medications (Jones Declaration, para. 25).

Mr. Robinson told Ms. Jones that if she returned to work with medical restrictions, she would put the university and the staff at risk (Jones Declaration, para. 26).

Mr. Robinson told Ms. Jones that he checked personnel files and that there had never been any light duty work for police officers (Jones Declaration, para. 27).

After speaking with Mr. Robinson, Ms. Jones contacted human resources and spoke to Ms. Yvonne Chandler about the light duty notice. She said that Ms. Jones needed to go back to her department because the notice came from her department. Ms. Jones called Lt. Morton again and he told her that he would hand carry the notice to personnel (Jones Declaration, para. 28).

In or about September or October 2003, Ms. Jones' workers compensation claims adjuster sent her a copy of a memorandum purportedly written by Lt. Morton on March

14, 2003. The memorandum states that Ms. Jones had requested light duty and that there were no light duty assignments available for her. Although the memorandum is dated March 14, 2003, Ms. Jones believes this date is incorrect. In March 2003, Ms. Jones was recovering from the gastric bypass surgery that she had on February 27, 2003 and was unable to come back to work at that time. In addition, the top of the document shows that it was faxed from the UDC Personnel Office on July 28, 2003 (Jones Declaration, para. 29; **Exhibit 7**, Memorandum from Phillip Morton).

Neither Lt. Morton nor Mr. Robinson nor anyone else at UDC, asked Ms. Jones to provide a doctor's note or certificate regarding her medical restrictions or told her that she needed to provide a doctor's note before UDC would consider granting her a reasonable accommodation. UDC gave her no opportunity to provide documentation concerning her medical restrictions (Jones Declaration, para. 30).

In August and September 2003, Ms. Jones spoke to several officials at UDC including Mr. Robinson, Lt. Morton, Lt. Adams, Lt. Medley and Communications Officer Virgil Royal concerning her request for light duty. UDC continued to deny her request (Jones Declaration, para. 31).

In October 2003, Ms. Jones again contacted Lt. Morton and he told her that there was no light duty available (Jones Declaration, para 32).

Dr. Omohundro sent his note releasing me to work light duty to workers' compensation officials. Rehabilitation officials contacted UDC regarding returning me to work on light duty status (Jones Declaration, para 33).

In July 2003, the job of a police officer at UDC included patrolling, issuing notices of parking infractions, performing traffic details, assisting other officers with

incidents, and working in communications (Jones Declaration, para. 34; **Exhibit 8**, Robinson depo. p. 10-11).

In July 2003 Ms. Jones could have performed her former job with the medical restrictions required by her health care provider in his July 2, 2003 note. For example, she could have performed limited patrolling by foot and vehicle, issued notices of parking infractions, performed traffic details, escorted staff and students to and from their vehicles, responded to incidents, assisted coworkers with incidents, answered telephones, prepared incident reports, evaluated police equipment, worked in the registration area, and worked in communications (Jones Declaration, para. 35).

The EEOC found that Ms. Jones contacted UDC again in 2004 and attempted to provide doctors notes which allowed for her release with medical restrictions, but that UDC continued to deny her reinstatement (Jones Declaration, para. 36; **Exhibit 1**, Determination letter).

In August 2004, Ms. Jones again contacted Lt. Adams and Lt. Medley regarding the possibility of returning to work light duty. They told her that there was no light duty available (Jones Declaration, para. 37).

The EEOC found that UDC failed to provide Ms. Jones with a reasonable accommodation as required by the ADA. The EEOC also found that UDC refused to enter into the interactive process of providing her with an accommodation (Jones Declaration, para. 38; **Exhibit 1**, Determination letter).

The EEOC found that Ms. Jones would have provided medical records to UDC had UDC properly entered into the interactive process instead of rejecting her attempts to

provide medical documentation and return to work (Jones Declaration, para. 39; **Exhibit 1**, Determination letter).

The EEOC found that UDC provides light duty assignments to other officers (Jones Declaration, para. 40; **Exhibit 1**, Determination letter).

At the time UDC denied Ms. Jones' requests for accommodations, it was permitting other officers to work light duty (Jones Declaration, para 41; **Exhibit 9**, Morton Depo., p. 13-15; **Exhibit 8**, Robinson Depo., p. 11-19).

UDC permitted other officers to work light duty for extended periods of time (Jones Declaration, para. 42; **Exhibit 10**, Letter from Officer Charles Smith).

In his September 15, 2006 report, Ms. Jones' physician, Phillip H. Omohundro, M.D., stated that she remains released to a sedentary work position and that this should be made permanent (Jones Declaration, para. 43; **Exhibit 11**, Report from Dr. Omohundro dated September 15, 2006).

Ms. Jones has been without a paycheck from Defendant since 2002 (Jones Declaration, para 44).

## LEGAL ARGUMENT

### I. Introduction

Summary judgment should be denied. Ms. Jones has established a prima facie case of discrimination under the Rehabilitation Act.

### II. Summary Judgment Standard

Summary judgment may be granted only if "there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact "is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Id. at 248). In deciding a motion for summary judgment, the court must view the facts and the reasonable inferences from the facts "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[I]f reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

### III. Plaintiff has a Prima Facie Case of Discrimination under the Rehabilitation Act for Failure to Accommodate

The Rehabilitation Act provides that "no otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The standards governing employment discrimination claims applicable under the Americans with Disabilities Act (ADA) apply to the Rehabilitation Act. 29 U.S.C. § 794(d). Under the ADA, discrimination includes failing to accommodate an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In order to establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show (1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Pantazes v. Jackson*, 366 F. Supp. 2d 57 (D.D.C. 2005). In this case, the facts support each of the elements of a prima facie case of discrimination.

10

1.  **The EEOC Found that Ms. Jones is disabled under the Rehabilitation Act.**

Under the Rehabilitation Act, a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities." 29 C.F.R. § 1630.2 (g).  In reaching its decision that UDC violated the ADA, the EEOC determined that Ms. Jones is a disabled person within the meaning of the Act.

There is no question that Ms. Jones' disabilities substantially limit one or more of her major life activities including walking, standing, bending, lifting.  Ms. Jones suffers from suffer from chronic arthritis in her shoulder, neck and knees, bursitis in her hip, and various chronic back conditions.  She has pain and spasms when walking, sitting, bending, and lifting.  She cannot reach above her right shoulder level without pain.  When she tries to kneel, she falls face down.  She has anxiety attacks.  Her left and right knees give out sometimes.  Her left knee causes her a great deal of pain on a daily basis.  She has difficulty climbing steps.  She has spasms in her right shoulder, lower back, neck and knees.  She also has arthritis in her left hand which affects her writing.  Her doctor has placed restrictions on the amount of time she can spend walking or standing.  She is not allowed to do any lifting or carrying.  She has been in pain since December 17, 1999.  She depends on her spouse to assist her with her personal care depending on the severity of her pain.  Her disability is permanent.

When Dr. Omohundro released Ms. Jones to work light duty in July 2003, he stated that she could not walk or stand more than two hours intermittently in an eight hour day.  He further stated that she should do no lifting or carrying.  Ms. Jones' disabilities have persisted since July 2003.  On September 15, 2006, Dr. Omohundro stated that she remains released to a sedentary work position and this should be made permanent.

Because Ms. Jones suffers from disabilities that limit her major life activities and her condition is permanent, Ms. Jones is disabled under the Rehabilitation Act.

**2.      The EEOC Found that UDC had notice of Ms. Jones' disability.**

There is no question that UDC had notice of Ms. Jones' disability. First, UDC does not dispute that Ms. Jones' became disabled as a result of work-related injuries or that UDC officials were receiving reports from workers' compensation officials regarding the status of Ms. Jones disabilities. Second, the memorandum from Lt. Morton (Exhibit 7) establishes that UDC knew that Ms. Jones was requesting light duty.

The Court should ignore UDC's self-serving contention that plaintiff's reasonable accommodation claim should be rejected because she did not provide medical documentation to UDC. UDC had access to Ms. Jones' medical records because she was receiving workers' compensation. But more importantly, the EEOC found that Ms. Jones would have provided medical records had UDC properly entered into the interactive process instead of rejecting her attempts to provide medical documentation and return to work.

The facts show that UDC did not give Ms. Jones an opportunity to provide her doctor's note explaining her restrictions. After she advised her supervisors that she was released to return light duty, Lt. Morton and Mr. Robinson told her that there was no light duty available. Mr. Robinson told Ms. Jones that she could not come back to work unless she had no restrictions. This is supported by the memorandum from Lt. Morton (Exhibit 7).

The EEOC found that Ms. Jones attempted to provide doctors' notes in 2003 and 2004. Each time she was told that there was no light duty available.

3.  **Ms. Jones could perform her job with reasonable accommodations.**

After she was injured in 1999, Ms. Jones returned to work light duty and continued on light duty status until she was injured in November 2002. During that time period, Ms. Jones worked as a police officer. She performed limited patrolling by foot and vehicle, issued notices of parking infractions, performed traffic details, escorted staff and students to and from their vehicles, responded to incidents, assisted coworkers with incidents, answered telephones, prepared incident reports, evaluated police equipment, worked in the registration area, and worked in communications. Notably, she did not carry a firearm at work after the assault in 1999.

Ms. Jones' own experience working light duty refutes UDC's allegations that she could not perform the essential functions of a UDC police officer. In addition, UDC allowed several other police officers to work in light duty positions even after refusing to accommodate Ms. Jones. Contrary to UDC's version of the facts, some of those officers worked light duty for lengthy periods of time. UDC does not deny that Ms. Jones herself was on light duty status from 1999 to 2002.

4.  **The EEOC found that UDC refused to engage in the interactive process or make accommodations.**

The EEOC found that UDC refused to enter into the interactive process of providing Ms. Jones with a reasonable accommodation. As noted above, Ms. Jones contacted UDC on several occasions in an attempt to return to work on light duty status. However, instead of engaging in the interactive process, Ms. Jones' supervisors simply told her that there was no light duty available and that she needed to get a doctor's note saying that she could return to work without restrictions.

Once UDC became aware that Ms. Jones was seeking a reasonable

accommodation, it was required by law to engage in an informal interactive process in order to identify her limitations, as well as potential accommodations that could overcome those limitations. 29 C.F.R. § 1630.2(o)(3). For summary judgment purposes, the failure of an employer to engage in the interactive process is considered prima facie evidence that the employer may be acting in bad faith. *Ballard v. Robert E. Rubin, Secretary of the Treasury*, 284 F.3d 957 (8th Cir. 2002).

UDC's claim that Ms. Jones could not perform as a police officer even with accommodations should be rejected since it never engaged in any dialogue with Ms. Jones regarding her request for a reasonable accommodation.

### IV.     **Plaintiff Should Not Be Precluded From Alleging Continuing Disability Discrimination**

UDC claims that because Ms. Jones' EEOC complaint does not include any events or dates after October 2003, she did not exhaust her administrative remedies regarding disability discrimination after October 2003. In support of that claim, UDC cites *Marshall v. Federal Express Corp.*, 130 F.3d 1095 (D.C. Cir. 1997). In that case the court explained that allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. 130 F.3d at 1098.

In the instant case, the EEOC investigated UDC's continued denial of reasonable accommodations to Ms. Jones after October 2003. In its determination letter, the EEOC specifically found that Ms. Jones contacted UDC in August 2004 and that UDC refused to provide her with a reasonable accommodation (Exhibit 1). Moreover, Ms. Jones' allegation in her complaint that UDC denied her accommodations in 2004 is reasonably

related to the allegations of her charge and grows out of such allegations. *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 39 (D.D.C. 2004). It also involves the same conduct (denial of a reasonable accommodation) and the same individuals (Ms. Jones' supervisors at UDC). *Carroll v. England*, 321 F. Supp. 2d 58, 65 (D.D.C. 2004).

UDC clearly had notice of Ms. Jones' charges. UDC is well aware that it did not grant her a reasonable accommodation at any time after 2003. Thus, Ms. Jones' continued claims of disability discrimination against UDC should not be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
Alan Lescht, DC Bar # 441691
Susan L. Kruger, DC Bar # 414566
Alan Lescht & Associates
1050 17th Street, N.W.
Washington, DC  20036
202-463-6036
202-463-6067 (fax)