EXHIBIT 8

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
----------------------------x
VALERIE JONES,                :
                              :
                              :
         Plaintiff,           :
                              :
                              :
         v.                   : No. 05-1187(RMU)
                              :
UNIVERSITY OF THE DISTRICT    :
OF COLUMBIA BOARD             :
OF TRUSTEES et al.,           :
                              :
         Defendants.          :
----------------------------x
```

Washington D.C.

Thursday, October 12, 2006

Deposition of

ROBERT T. ROBINSON

a witness, called for examination by counsel for Plaintiff pursuant to notice and agreement of counsel, beginning at approximately 11:10 a.m. at 4200 Connecticut Avenue, NW, Washington D.C., before Janet Evans-Watkins of Beta Court Reporting, notary public in and for the District of Columbia, when were present on behalf of the respective parties:

10

```
 1      A    That -- the date is what it is.
 2      Q    Right.  Have you seen this
 3  document?
 4      A    I don't recall seeing the document.
 5      Q    Are you generally aware of what
 6  Ms. Jones' duties of her position are?
 7           MS. DeLORENZO:  Objection as to
 8  time frame.
 9           BY MS. KRUGER:
10      Q    Well, let's say if she were to have
11  returned to work in July of 2003, do you know
12  what her duties would have been ordinarily?
13  Not light duties, but what would have been
14  expected of her.
15      A    Yes.  I believe that you have a job
16  description here of police officers on
17  campus.  And that's -- those would have been
18  her duties in addition to whatever -- if any
19  assignments might have came her way.
20      Q    Would those duties have included
21  patrolling?
22      A    That's exactly what a patroller
```

1   does.

2       Q    Issuing notices of parking

3   infractions?

4       A    Yes, ma'am.

5       Q    Performing traffic details?

6       A    Yes, ma'am.

7       Q    Responding to incidents?

8       A    Yes, ma'am.

9       Q    Assisting other officers with

10  incidents?

11      A    Yes, ma'am.

12      Q    Doing work in communications?

13      A    Yes, ma'am.

14      Q    I'm asking you this as a fact

15  witness, do you know of officers, any

16  officers, who have been given light duty

17  assignments since you have arrived at UDC?

18      A    Yes, ma'am.

19      Q    Can you tell me who those officers

20  are?

21      A    Well, I can recall Officer Charles

22  Smith.

12

1  Q  Is he on light duty now?

2  A  He no longer work here.

3  Q  No longer works here? Okay. How
4  long was he on light duty?

5  A  I could not tell you how long he
6  was on light duty. But he has -- what he did
7  was work on light duty while he was here.

8  Q  Do you know what kinds of duties he
9  performed in the capacity of working light
10 duty?

11 A  When he was assigned to light duty,
12 he was assigned to the dispatch unit.

13 Q  What kinds of duties did that
14 entail?

15 A  That basically consists of
16 sedentary type of positions. But in -- it
17 entailed responding to all phones, alarms,
18 walk-in customers and so forth and so on,
19 mainly a communications officer.

20 Q  Again, just as a fact witness, do
21 you know how he came to get that light duty
22 assignment?

13

```
 1     A    Yes.

 2     Q    How did that occur?

 3     A    I assigned light duty upon the
 4  documentation from his medical provider.

 5     Q    Do you know when that occurred?

 6     A    No, I don't.

 7     Q    Did he make a formal request of
 8  some sort for light duty?

 9     A    Well, be brought -- he produced a
10  doctor's certificate, and on that
11  certificate, it described the duties that he
12  could and could not perform for a period of
13  time.

14     Q    Did you ever tell Mr. Smith that
15  there were no light duty positions available?

16          MS. DeLORENZO:  Could you narrow
17  the time frame?  Are we just talking about
18  since he was been in this position?

19          I'm sorry.

20          THE WITNESS:  Repeat the question.

21          BY MS. KRUGER:

22     Q    Did you ever tell Mr. Smith that
```

14

1   there were no light duty positions available?

2       A    May I explain --

3       Q    Sure.  Go ahead.

4       A    Okay.  We don't create light duty

5   positions.  It is something that happens

6   here -- for example, if the communications

7   center needed -- needed persons to work.  If

8   a person came in with a doctor's

9   certification saying that they was not able

10  to do prolonged patrol and so forth, I would

11  assign that person duties within the

12  communications center that would meet those

13  qualifications.  So we don't have light duty

14  positions.  If at the time, there was no

15  communication position available, then there

16  would not be any light duty assigned.

17      Q    Regarding Mr. Smith, are you saying

18  that there was a position in the dispatch

19  unit that was available?

20      A    I'm saying at the time that he

21  brought the documentation in, we could

22  accommodate him for a period of time within

1   the communications center.

2       Q   When someone comes in and requests
3   light duty, what do you do in order to
4   determine whether there are any positions
5   available?

6       A   Simply look at the schedule.
7   Again, may I reiterate -- there is only one
8   position here that we would assign a person
9   with light duty.  But keeping in mind they
10  must be able to perform those duties within
11  the communications center.  If they are
12  unable to perform communications center
13  duties, then there is no light duty.

14      Q   So are you saying that the only
15  light duty positions would be within the
16  communications center?

17      A   Currently, that is it.

18      Q   Are you familiar with Betty Hodges?

19      A   Betty was an employee, yeah.

20      Q   And she also worked light duty for
21  a period of time; isn't that correct?

22      A   I believe Betty did for a short

```
1   period of time.

2       Q    Do you know what she did?

3       A    Betty performed a communication
4   function as a dispatcher.

5       Q    Was that all she did?

6       A    That is all she did.

7       Q    Are you the person that signed off
8   on her request for light duty?

9       A    If there is light duty to be done,
10  I would sign off on it.  I would make sure
11  that happens.  No one else has that
12  authorization but me.

13      Q    But in her case, do you recall
14  authorizing light duty for her?

15      A    If she worked light duty under my
16  administration, I signed off on it.  I gave
17  the okay for her to do it.

18      Q    How about Virgil Royal?

19      A    If Virgil Royal was assigned light
20  duty during my administration, I signed off
21  on it.

22      Q    Do you know what kind of light duty
```

17

1  work he performed?

2       A    Again, the only light duty during

3  my administration has been the communications

4  center only.  No other area.

5       Q    Right.

6       A    The communications center.

7       Q    I'm just going to go through and

8  ask you about some other employees, and I'd

9  like you to just verify that their light duty

10 was within the communications center and

11 nothing else.

12      A    If I approved it.

13           MS. DeLORENZO:  Okay.  If I can

14 object, because I'm not sure if you are

15 asking if he recalls whether these

16 individuals were on light duty, and then if

17 he answers yes, whether the light duty was

18 in -- I think the questions are getting

19 confused.

20           BY MS. KRUGER:

21      Q    Basically right now I'm asking

22 whether you have personal knowledge, whether

1   you can remember specifically, with each of

2   these individuals, them requesting light

3   duty, you approving the request and assigning

4   them to work in communications.

5        A    I understand.

6        Q    So Charles Smith, it seems to me

7   that you did have a recollection of assigning

8   him work in communications; isn't that

9   correct?

10       A    I believe you have a written

11  document to that effect.

12       Q    Betty Hodges, do you recall her

13  asking you for a light duty assignment?

14       A    They don't ask for light duty, they

15  come in with a doctor's certificate saying

16  what they are able to do or not.  Based upon

17  the year and contract, we try to accommodate

18  when possible.

19       Q    Okay.

20       A    That's what we do.  If Betty Hodges

21  came in with a doctor's certificate saying

22  that she had limited duty, and if there was a

1   position available for her to perform within

2   the Department of Public Safety, I'd assign

3   her to that task.

4       Q   Do you specifically recall her

5   coming in with a doctor's certificate?

6       A   I don't recall.

7       Q   Do you specifically recall

8   assigning her to work in communications?

9       A   I believe I have answered that

10  question.

11      Q   Well, you can answer it again.

12      A   I believe I did assign her.

13      Q   Virgil Royal was another person who

14  was assigned to work light duty; is that

15  correct?

16      A   I said if he was assigned --

17      Q   Right.  But I'm asking you --

18      A   But I'm --

19      Q   Right now --

20      A   You got to listen to me.

21      Q   Sir, I'm conducting the deposition.

22  Maybe we should have gone over some of the