UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Valerie Jones,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 05-1187 (RMU) |
| ) | |
| **University of the District of Columbia** ) | |
| **Board of Trustees,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

The University of the District of Columbia Board of Trustees ("UDC"), by and through undersigned counsel, hereby submits this Reply to Plaintiff's Opposition to its Motion for Summary Judgment.

The UDC's motion, which is incorporated by reference, argued that summary judgment should be entered in its favor for the following reasons: 1) the plaintiff failed to exhaust her administrative remedies for any allegation of discrimination occurring outside of the time period of July 2003 to October 2003; 2) the plaintiff is not disabled; 3) the plaintiff failed to give notice to any UDC official of her disability in July 2003 or October 2003 nor has she *to date* provided to the UDC any medical documentation documenting a disability, restriction or limitation on her ability to return to work; and 4) the plaintiff could not perform essential functions of the UDC police officer position with or without a reasonable accommodation.

The plaintiff's Opposition argues that: 1) Plaintiff has met her *prima facie* burden of discrimination under the Rehabilitation Act for failure to accommodate; and 2) Plaintiff should not be precluded from alleging continuing disability discrimination.

However, this Court should grant the District's motion because as set forth below, Plaintiff's Opposition has numerous procedural and substantive deficiencies. Notably, even if the Court finds that there is a genuine issue of fact with respect to the administrative exhaustion, notice and disability arguments raised by the UDC in its Motion, summary judgment should still be entered in the UDC's favor because the plaintiff conceded that her disability is permanent. (Opposition at 3.) Accordingly, with such a concession, she has failed to satisfy her *prima facie* burden that she is a qualified individual with a disability because there is no reasonable and permanent accommodation that will allow her to perform the essential functions of the police officer position. Moreover, in light of the September 15, 2006 doctor's note recommending that she be assigned to a *permanent sedentary* position, there is no such sedentary position available to the Plaintiff that will enable her to perform the essential functions of the police officer position, and the UDC is not obligated to create a new position for her. For these reasons, summary judgment should be entered in the UDC's favor.

1. **PLAINTIFF'S OPPOSITION HAS NUMEROUS PROCEDURAL DEFICIENCIES.**

The plaintiff's Opposition has many flaws. First, her Response to the Defendant's Statement of Undisputed Facts does not comply with Fed. R. Civ. P. 56 or Local Rule 7. Second, portions of her Declaration are inconsistent with her prior sworn testimony. Other portions of her Declaration are not based on personal knowledge and rely on inadmissible evidence. Third, several of her attached exhibits, including the EEOC determination and several letters, are conclusory and inadmissible hearsay. For these reasons, the Court should admit all of the defendant's Statement of Undisputed Facts and strike or otherwise disregard the deficient portions of her Opposition.

### A. The Plaintiff's Response to Defendant's Statement of Undisputed Facts Does not Comply With Fed. R. Civ. P. 56(e) and Local Rule 7(h).

Fed. R. Civ. P. 56(e) (emphasis added) reads:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *… When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Furthermore, Local Rule 7(h) reads:

An Opposition [to a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parties of the record relied on to support the statement … In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted by in the statement of genuine issues filed in opposition to the motion.

In this case, plaintiff's Opposition does not comply with these Rules. Significantly, Plaintiff's Response to Defendant's Statement of Undisputed Facts is woefully deficient because it mostly either admits the statement with a qualification (which is not really an admission) or denies the proposed undisputed facts and/or qualifies the denial.[1] There is no separate statement of genuine issues. Furthermore, there is not a single citation to the record in any of the plaintiff's responses, which clearly fails to comply with Rule 7(h)'s requirement that a party "shall include references to the parts of the record relied on to support the statement." Moreover, there are

---

[1] The UDC has no problem with plaintiff's admissions without any qualification or remarks to paragraphs 1, 15, 17, 18, 20, 22, 25, 31, 33 and 34.

several responses (either denial or admission with qualification) that are wholly unsupported by the record.[2]

These deficiencies cannot salvage plaintiff's Opposition, and they cannot create a genuine issue of fact. Accordingly, any paragraph that is not admitted without qualification or other remark fails to comply with the rules of procedure for this Court. As such, these responses should all be deemed as admitted pursuant to Local Rule 7(h). Based on the UDC's motion and its statement of undisputed facts, summary judgment should be entered in the UDC's favor for the reasons cited therein.

### B. A Large Portion of Plaintiff's Self-Serving Declaration Should be Stricken From the Record.

The Plaintiff attaches a Declaration to her Opposition for Summary Judgment. However, it contains several statements that are wholly inconsistent with her Answers to Interrogatories and sworn deposition testimony. Other portions of the Declaration are not based on personal knowledge and refer to exhibits that are inadmissible and should be stricken from the record or otherwise disregarded. Plaintiff's blatant attempts through her Declaration to change her prior

---

[2] For instance, the UDC proposed the following fact in paragraph No. 2: "Ms. Jones received a copy of the Collective Bargaining Agreement ("CBA") after she was hired by the UDC. (Exhibit A at 58.)" Plaintiff's response to paragraph No. 2 is: "Plaintiff admits that she received a copy of the Collective Bargaining Agreement but denies that she received it prior to 2004." However, in her sworn deposition, she conceded that she received a copy of the Agreement and admits that she received it "probably when I first started at the university. At some point after that." (Exhibit P at 53.) When asked again, she testified that she received a copy "After I was hired at the university. At some point, I received it." (Exhibit A at 58.) At no point does her testimony reveal that she received it after 2004.
    Another example is plaintiff's response to paragraph No. 35, which denies the following undisputed fact: "Ms. Jones never contacted Lt. Morton, Lt. Adams, Lt. Medley or Mr. Robinson in 2004 to come back to work. (Exhibit A at 199.)" However, as described in Part 1(B)(i), that was exactly Ms. Jones' sworn deposition testimony.
    Another example is plaintiff's response to paragraph No. 37, which denies the following undisputed fact: "From July 2003 and up to the present, Ms. Jones never provided *any* medical documentation to any UDC official relating to any work restrictions or limitations on her ability to return to work. (Exhibit A at 152.)" However, as demonstrated in Part 1(B)(v), this was her exact concession in her deposition.

sworn testimony or modify the record evidence in this case to create a question of fact are a sham. Accordingly, large portions of her Declaration should be stricken from the record or otherwise disregarded by this Court.

In *Thompson v. Islam*, 2005 U.S. Dist. LEXIS 37114 (D.D.C. 2005), the Honorable Paul L. Friedman had to resolve the apparent inconsistency between the plaintiff's deposition and the affidavit that she presented with her Opposition to the defendant's Motion for Summary Judgment. There, Judge Friedman conducted the following analysis:

> Plaintiff cannot create or resurrect a genuine issue of material fact and thereby defeat summary judgment by filing a self-serving affidavit that contradicts previous sworn testimony. A party may not create a material issue of fact simply by contradicting prior sworn testimony with a later-filed affidavit … "The objectives of summary judgment would be seriously impaired if the district court were not free to disregard" such an affidavit. … "[A] party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment." … In such circumstances, "the prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction." … Where a party emphatically and wittingly swears to a fact, it … bears a heavy burden -- even in the summary judgment context -- when it seeks to jettison its prior sworn statement.

2005 U.S. Dist. LEXIS 37114 at *7-9 (internal citations omitted).

Judge Friedman concluded that the Plaintiff's affidavit "provide[d] no explanation for her contradictory statements," and the Court "disregard[ed] the parts of plaintiffs' affidavit that are inconsistent with her prior sworn testimony." 2005 U.S. Dist. LEXIS 37114 at *9 (internal citations omitted). Accordingly, where Plaintiff's Declaration is inconsistent with her prior sworn testimony, such paragraphs should be stricken from the record or otherwise disregarded.

   i.   <u>Plaintiff's Declarations Regarding When She Contacted the UDC About Returning To Work Are Wholly Inconsistent With Her Answers to Interrogatories and Sworn Deposition Testimony.</u>

Plaintiff's statements in her declaration relating to when she contacted the University

5

about returning to work are wholly inconsistent with all of her prior statements.[3] As described in the UDC's Motion, Ms. Jones' consistent sworn testimony was that she only contacted the UDC about returning to work in July 2003 and October 2003. These dates –and only these dates – are identified in her EEOC Charge of Discrimination, her Answers to Interrogatories and her sworn deposition testimony. First, Ms. Jones's December 17, 2003 EEOC Charge of Discrimination only listed the dates of July 5, 2003 and October 27, 2003 as to when she contacted the UDC. (Exhibit J.) Notably, the plaintiff conceded in her deposition that she did not amend her EEOC Complaint. (Exhibit P at 121-22.)[4]

Second, when the UDC questioned Plaintiff about her alleged requests for reasonable accommodations through interrogatories, she only identified the relevant time period as occurring between July 2003 and October 2003. As described in the UDC's motion, the defendant proffered the following interrogatory:

> For each of your requests for accommodation from UDC, identify the person making the request, the person to whom the request was made, the date, nature and form of the request, and the specific accommodation(s) requested. Identify any relevant documentation in accordance with Instruction 7 and 8.

(Plaintiff's Supplemental Answers to Defendant's Interrogatory No. 6, attached as Exhibit N.)

The plaintiff's answer was:

> In or about July 2003, Plaintiff requested reasonable accommodations in the form of light duty from Lt. Morton and also from Mr. Robinson, and her physician requested light duty in a note dated July 2, 2003 … Each request was denied. I made my requests for light duty by telephone in July 2003 and October 2003 ...

(Exhibit N at No. 6.) This answer does not provide UDC with any notice of any claims arising after the dates described in the EEOC complaint, namely July 2003 and October 2003.

---

[3] Notably, the plaintiff does not even pretend to acknowledge these numerous inconsistencies or offer any explanation for them.

[4] Undersigned counsel just learned that a blank page is in Exhibit A in place of where page 122 should be. Undersigned counsel is therefore including pages 121 and 122 as part of Exhibit P.

Notably, in any prior testimony or statements, she failed to identify any dates outside of July 2003 and October 2003 for when she contacted the UDC about returning to work. She also conceded in her sworn deposition testimony that she never contacted Lt. Morton, Lt. Adams, Lt. Medley or Mr. Robinson in 2004 to come back to work:

> Q      In 2004, did you ever make contact with Morton or Robinson or Medley or Adams at UDC to try and come back to work?
>
> A      2004? Not to my recollection.

(Exhibit A at 199.)

Curiously, though, Ms. Jones' declaration – for the first time – identifies dates in August and September 2003 and August 2004 for when she contacted the UDC.[5] This new timeline is wholly inconsistent with her numerous sworn statements.[6] Accordingly, those inconsistent portions, *i.e.,* paragraphs 31, 37 and any other paragraphs in the Declaration referencing any attempts by plaintiff to contact the UDC outside of July 2003 and October 2003, should be stricken from the record or otherwise disregarded. Therefore, as the plaintiff has not established an issue of fact on this issue, summary judgment should be entered in the defendant's favor with respect to defendant's argument that plaintiff failed to exhaust administrative remedies for any allegations of discrimination occurring outside of July 2003 and October 2003.

---

[5] *See* Declaration at ¶ 31 ("In August and September 2003, I spoke to several officials at UDC including Mr. Robinson, Lt. Morton, Lt. Adams, Lt. Medley and Communications Officer Virgil Royal concerning my request for light duty. UDC continued to deny my request."). *See also* Declaration at ¶ 37 ("In August 2004, I again contacted Lt. Adams and Lt. Medley regarding the possibility of returning to work light duty. They told me that there was no light duty available.").

[6] Additionally, the format of Plaintiff's Declaration contributes to its suspect nature. For instance, the page on which Ms. Jones states that her declarations are true and correct "under penalty of perjury" is not on the same page as the actual declarations, even though the last declaration is at the top of the previous page. Moreover, that declaration page appears to be in a different font than the declarations. It is also the only page that appears to be faxed.

        ii.        <u>All Paragraphs in the Declaration Referencing Exhibits No. 1, 6 and 10 Should Be Stricken Because Those Exhibits Are Inadmissible in an Opposition to a Motion for Summary Judgment.</u>

Plaintiff's Declaration also makes references to her other exhibits. However, as demonstrated below (*see* Part 1(C)), Exhibits 1, 6 and 10 should be stricken from the record or otherwise disregarded. Accordingly, any paragraph in the Declaration that references any of these exhibits should be stricken from the record or otherwise disregarded.

        iii.        <u>Paragraph 5 of the Declaration Should be Stricken Because It Inaccurately Describes the EEOC's Determination and Has No Foundation.</u>

The defendant finds very troubling Ms. Jones' declaration that "The EEOC found that I am disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act because I suffer from chronic arthritis in my shoulder, neck and knees, bursitis in my hip and various back conditions." (Declaration at ¶ 5.) Significantly, this statement is not based on personal knowledge. Although it can be inferred from the EEOC determination that it did conclude that the plaintiff was disabled, there is no explicit finding by the EEOC that she is disabled nor is there any factual explanation of the basis for her disability. *Very simply, there is no basis in the record for this statement.* Accordingly, the EEOC language cited by plaintiff in paragraph 5 of her Declaration is simply not supported by the record and is misleading. It should be stricken from the record or otherwise disregarded.

        iv.        <u>Paragraph No. 29 of the Declaration Should be Stricken Because There is No Foundation for Plaintiff's Statement Regarding When Lt. Morton Wrote the March 14, 2003 Memorandum.</u>

In paragraph 29 of the Declaration, Ms. Jones speculates that the March 14, 2003 Memorandum written by Lt. Morton was actually written in July 2003. However, she offers no evidence to support that hypothesis, other than that she has a copy of that Memorandum showing that it was faxed somewhere in July 2003. Plaintiff's unfounded speculation is insufficient to

create an issue of material fact.  *See Brown v. Brody*, 199 F.3d 446, 459 (D.C. Cir. 1999), citing, *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("a plaintiff's mere speculations are "insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment.").  Accordingly, that paragraph should be stricken from the record or otherwise disregarded.

> v. <u>Plaintiff's Declaration in Paragraph No. 30 that "UDC gave me no opportunity to provide documentation concerning my medical restrictions" is inconsistent with her sworn deposition testimony and is not supported by the record.</u>

The Collective Bargaining Agreement memorializes the requirement for police officers to provide UDC officials with medical documents showing that an employee has a limitation. (Exhibit B.)  In her deposition, Ms. Jones admitted receiving a copy of the Collective Bargaining Agreement, which clearly requires her to submit medical documentation if she is requesting an accommodation for health reasons.  (Exhibit A at 58.)  In her sworn deposition, she also conceded that from July 2003 and up to the present, she never provided *any* medical documentation to any UDC official relating to any restrictions or limitations on her ability to return to work.  The relevant portion of her testimony, which was cited in the UDC's motion, reads as follows:

> Q   Did you ever produce any documentation from a doctor about your restrictions on your duties at any time to the university from July 2003 to the present?
>
> A   From 2003 until—
>
> Q   From July 2003 to the present.
>
> A   No, not to my recollection.
>
> Q   Did you ask anyone to fax or mail or hand-deliver any documentation from any doctor about your restrictions from to the university from July 2003 to the present?

  A  Not to my recollection.

(Exhibit A at 152.)

Yet, in her declaration, she surprisingly contended that the UDC never gave her an opportunity to provide medical documentation. (Declaration at ¶ 30.) This statement is simply not supported by the record and should be stricken from the record or otherwise disregarded.

  vi. Paragraph 44 Should Be Stricken Because it is Inconsistent With her Sworn Deposition Testimony.

Paragraph 44 of Plaintiff's declaration reads: "I have been without a paycheck from Defendant since 2002." This statement is misleading and is wholly inconsistent with her December 2006 deposition testimony, where she admits that she had been receiving worker's compensation from the UDC since January 2003, stemming from her November 2002 injury. (Exhibit P at 310-311.) Her relevant testimony reads as follows:

  Q: Were you getting payments of $868 since you went out on workers' comp in November of '02?

  A: Yes. Well, originally it was, like, I believe $960-something, but they deduct it from my health insurance, so they dropped it down to $860-some because every two weeks, they automatically take out monies for my health insurance.

  Q: But when you said "originally," you meant November '02?

  A: Right. Well, I didn't receive any checks until January of 2003.

(Exhibit P at 310-311.) Based on the contradictory evidence, then, paragraph 44 should be stricken from the record or otherwise disregarded.

  **C. Most of Plaintiff's Exhibits to her Opposition Are Inadmissible and Should be Stricken from the Regard or Otherwise Disregarded.**

Ms. Jones attached numerous exhibits to her Opposition. However, most of these exhibits are improperly presented to the Court in an Opposition to a Motion for Summary

10

Judgment because they are conclusory, based on inadmissible hearsay evidence and/or created and produced to undersigned counsel long after the close of discovery.  For all of these reasons, the Court should strike these exhibits. [7]

                i.      <u>Plaintiff's Exhibit 1, the EEOC Determination, Should be Stricken Because it is Conclusory and Based on Inadmissible Hearsay.</u>

The EEOC declaration is attached as Exhibit 1 to her Opposition.  However, it should be stricken from the record or otherwise disregarded for several reasons.  First, it contains many conclusory statements.  Second, it is based on inadmissible hearsay evidence.[8]  Third, the EEOC determination is based on a different legal standard of proof than the instant court case and summary judgment motion.

Alternatively, even if the Court does not strike the EEOC determination, it should conclude that it does not create any issue of fact sufficient to preclude summary judgment.  *See*

---

[7] For the purposes of this Motion, the District will not challenge plaintiff's Exhibits 5 and 11, medical reports from Capitol Sports Medicine.  However, these exhibits further support the UDC's contention that Ms. Jones was not able to perform the essential functions of the police officer position with or without a reasonable accommodation.  For instance, Plaintiff's Exhibit 5, a report from a July 2, 2003 follow-up visit, reveals that, during this time, she has "partial giving away episodes."  It also states that she "is currently out of work because of the [gastric bypass] surgery and post-operative 'anxiety.'"  Moreover, it indicates that she is taking percocet, which supports plaintiff's admission to Mr. Robinson in their July 2003 telephone conversation that she is on medication that makes her groggy.  Notably, however, there is no evidence *anywhere in the record* that this report was given to Mr. Robinson, Lt. Morton or any of the other supervisors at the UDC, as required by the Collective Bargaining Agreement.
     Plaintiff's Exhibit 11, a September 15, 2006 follow up report, helps UDC in that it shows that she is not currently capable of performing the essential functions of the police officer position.  First, it states that Ms. Jones "completed a functional capacity evaluation that is inconclusive due to reported less than maximal effort."  Second, she continues to have "partial giving away episodes" and remains on several different types of medication.  Third, and perhaps most significantly to plaintiff's claim that she can perform the police officer position with a reasonable accommodation, this report does not recommend light duty; but rather, recommends that plaintiff should be "released to a sedentary work position and this should be made permanent."  (Exhibit 11.)  A sedentary work position is a substantially different position than the light duty work described by Ms. Jones in her deposition.  (*See* Motion at 32.)  Moreover, it is fatal to her claim of disability discrimination.  (*See* Part 2(B).)  Finally, there is no evidence *anywhere in the record* that this report was given to Mr. Robinson, Lt. Morton or any of the other supervisors at the UDC, as required by the Collective Bargaining Agreement.  Nor is there any record that she contacted any of these individuals after September 15, 2006 to inquire about returning to work.

[8] Notably, the EEOC determination relies on several hearsay statements and does not even identify the witnesses who made the alleged statements. The Court should not consider these hearsay statements.

*Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005) (concluding that the EEOC determination in plaintiff's favor is not a "free pass through summary judgment"); *Dorsey v. Atlanta Cmty. Food Bank*, 2007 U.S. Dist. LEXIS 17596 *12 n.6 (N.D. Ga.) (internal citations omitted) ("That [EEOC] determination is not a substitute for the well-established analytical framework applicable to ADA claims, and it is not sufficient evidence, in and of itself, to survive a properly supported motion for summary judgment. The EEOC determination letter is conclusory and does not directly address whether Plaintiff suffers from a disability within the meaning of the ADA. Although the letter concludes that Plaintiff was demoted and discharged 'based on his disability,' it does not identify which of Plaintiff's major life activities is substantially limited by his impairment, or what evidence the agency considered in concluding that Plaintiff was disabled. In view of these patent failings, the EEOC determination letter is insufficient to establish that Plaintiff suffers from a disability."). *See also Simms v. Ok. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1331 (10th Cir. 1999) ("when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one."); *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 598 (S.D. Tex. 2005) ("If the summary judgment record independent of the letter of determination does not raise an issue of material fact that would prevent the grant of summary judgment, the Court is not persuaded that it should treat a favorable EEOC investigation and letter of determination as creating an issue of fact."). Accordingly, any "findings" made in the EEOC determination should not be considered for the purposes of this motion for summary judgment.

    ii. <u>Plaintiff's Exhibit 6, a Letter from Glenn Adams, Was Created and Produced to Defendant's Counsel *Long After* the Close of Discovery and is Inadmissible Hearsay.</u>

As the Court can see from the record in this case, discovery closed on December 5, 2006. However, Plaintiff's Exhibit 6, a January 16, 2007 letter from Lt. Glenn Adams, was written *almost six weeks after discovery closed.* It was not produced to undersigned counsel until after that date. Moreover, Lt. Adams' statement is entirely inadmissible hearsay. Moreover, Ms. Jones should not be rewarded for creating evidence after the discovery deadline closed. Accordingly, the Court should strike from the record or otherwise disregard Plaintiff's Exhibit 6.

    iii. <u>Plaintiff's Exhibit 10, a Letter from Charles Smith, is Inadmissible Hearsay.</u>

Similarly, plaintiff's Exhibit 10 should be stricken from the record or otherwise disregarded because it is inadmissible hearsay.

**2. AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE ENTERED IN THE UDC'S FAVOR BECAUSE THE PLAINTIFF CONCEDES THAT HER DISABILITY IS PERMANENT AND THE UDC IS NOT OBLIGATED TO CREATE A PERMANENT POSITION FOR HER.**

As described above, there are portions of plaintiff's declaration that are inconsistent with her prior sworn testimony or that rely on inadmissible exhibits as well as several of plaintiff's exhibits should be stricken from the record or otherwise disregarded by the Court. *See* Parts 1(B) and (C), *supra*. Additionally, plaintiff's responses to the UDC's statement of undisputed facts are deficient and should be deemed admitted by the Court. *See* Part 1(A), *supra.* If the Court takes such action, the plaintiff has simply failed to satisfy her burden of demonstrating that there remain any genuine issues of fact. Accordingly, summary judgment should be entered in the UDC's favor on plaintiff's ADA and Rehabilitation Act claims.

Alternatively, the UDC recognizes that the Court may be unwilling to strike or otherwise disregard the declaration paragraphs and/or exhibits in the plaintiff's Opposition, despite their inconsistency and inadmissibility. Although the UDC does not concede that the plaintiff has met her burden in an Opposition to a Motion for Summary Judgment, the UDC acknowledges that, despite its comprehensive legal arguments, this Court may determine that a question of fact remains regarding one or more of the following issues: 1) whether plaintiff exhausted her administrative remedies; 2) whether plaintiff gave the UDC notice of her disability and/or provided medical documentation; and/or 3) whether plaintiff is disabled.[9]

However, this does not resolve the UDC's motion. Even if the Court takes all inferences in plaintiff's favor and finds that there is a question of fact with respect to the above issues, the Court should still grant summary judgment in the UDC's favor because the plaintiff cannot meet her *prima facie* burden under the ADA and the Rehabilitation Act. With her concession that her disability is permanent, Ms. Jones cannot demonstrate that she is a qualified individual with a disability because there is no permanent accommodation that will allow her to perform the essential functions of the police officer position. Moreover, the UDC is not obligated to create a new position for her. Additionally, in light of the September 15, 2006 doctor's note that recommends that she be assigned to a *permanent sedentary* position, there is no such *sedentary* position available to her that will enable her to perform the essential functions of the police officer position as described in the UDC's Motion. For these reasons, summary judgment should be entered in the UDC's favor.

---

[9] For the first time in this case, the plaintiff's Opposition contends that she is limited in the major life activity of reaching. (Opposition at 3.) However, as Ms. Jones did not allege this in her Amended Complaint or indicate that she was limited in this way in her written discovery responses or in her deposition, or otherwise put the UDC on notice of such a claim, she should not now be permitted to claim such a limitation.

> **A. Even Assuming that the Plaintiff Has a Permanent Disability, She Has Failed to Demonstrate that She is a Qualified Individual With a Disability Because There is No Reasonable Accommodation That Will Enable Her to Perform the Essential Functions of the Police Officer Position.**

In its Motion, the UDC determined the essential functions of the police officer position in its 1995 and 2003 position descriptions. (Exhibit D.) It appeared that the plaintiff conceded that she could not perform the essential functions of the police officer position *without* a reasonable accommodation because she admitted that she was unable to perform patrol duties for the entire 8-hour shift, she was on pain medication, suffered sometimes-debilitating anxiety attacks, could only conduct periodic inspections, was unable to operate machinery and she had not carried a gun since December 1999. (Motion at 30-31.) In fact, the Opposition does not dispute this contention.

It appeared from the record that the plaintiff was suggesting that there were two different options for a reasonable accommodation that were available to her both in 2003 and in the present. First, there was the two-week temporary accommodation given to the two other police officers described in the UDC's Motion. Second, she testified that she was previously given an indefinite assignment involving limited patrolling and communications work.

It appears from the plaintiff's Opposition that she is no longer interested in the first option, *i.e.,* a temporary, two-week accommodation, because she concedes that her disability is permanent. (Opposition at 3.) That concession is fatal to her claim of disability discrimination because she could only be requesting an accommodation that is permanent. At no time has Ms. Jones ever identified an available, *permanent* position at UDC that involves limited patrolling and communications. Moreover, such a permanent position would not allow her to perform the essential functions of the police officer position, as described in the UDC's Motion and the related position descriptions. Additionally, plaintiff has not provided, nor has undersigned

counsel identified, any legal authority for the proposition that the ADA and the Rehabilitation Act obligates UDC to create a permanent position for her. In fact, the case law is clear that the UDC is *not* obligated to transform a temporary accommodation to a permanent position or create a new permanent position for Ms. Jones. *See Blades v. Burlington County*, 2004 U.S. Dist. LEXIS 30343 *13 (D.N.J.) ("In this instance, demanding a permanent light duty assignment is akin to claiming that one is permanently incapable of performing the essential duties and functions of a corrections officer. The ADA does not compel this degree of permanent accommodation by reassignment to fundamentally different duties."). *See also Brooks v. City of Wichita*, 2006 U.S. Dist. LEXIS 40926, *citing*, *Martin v. Kansas*, 190 F.3d 1120, 1133 (10th Cir. 1999) ("The Tenth Circuit has held that an employer has no duty under the ADA to create a permanent light duty position when the position had previously been a temporary accommodation."); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004) ("An employer is not, however, obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions."). *See also Davis v. Heraeus Electro-Nite Co.*, 2002 U.S. Dist. LEXIS 16268 *13 (E.D. Pa. 2002) (internal citations omitted) ("The ADA does not mandate that the employer create a 'light duty' or new permanent position."). Accordingly, as plaintiff failed to meet her *prima facie* burden, summary judgment should be entered in the UDC's favor.

### B. **The Plaintiff Cannot Perform the Essential Functions of the Police Officer Position if She is Required to Work in a Permanent Sedentary Position.**

As explained above, Ms. Jones' Exhibit 11 is a September 15, 2006 report from Capitol Sports Medicine, which recommends permanent *sedentary* work. (Exhibit 11.) The plaintiff cannot reconcile the contention in her Opposition that she can perform the essential functions of the police officer position with a permanent reasonable accommodation that involves limited

16

...

patrolling and communications work with the September 15, 2006 report that recommends permanent *sedentary* work.

Moreover, Ms. Jones has failed to identify any permanent reasonable accommodation that would permit her to perform the essential functions of the police officer position (as described in the 2003 position description) *and* would also comport with the doctor's recommendation for a sedentary position. The reason for this failure is simple—no such position exists at UDC. (Exhibit D.)[10] Accordingly, summary judgment should be entered in the UDC's favor on all of plaintiff's claims.

                                                Respectfully submitted,

                                                LINDA SINGER
                                                Acting Attorney General for the District of Columbia

                                                GEORGE C. VALENTINE
                                                Deputy Attorney General
                                                Civil Litigation Division

                                                _____/s/_____
                                                PHILLIP A. LATTIMORE, III [422968]
                                                Section Chief
                                                General Litigation Section III


                                                _____/s/_____
                                                DANA K. DELORENZO [468306]
                                                Assistant Attorney General
                                                Sixth Floor South
                                                441 4th Street, N.W.
                                                Washington, D.C. 20001
                                                (202) 724-6515
                                                (202) 727-3625 (fax)
                                                E-Mail: dana.delorenzo@dc.gov

---

[10] Ms. Jones has been told repeatedly that she can apply for a sedentary position, like a communications specialist, but she has refused to do that, presumably because of the lesser salary.