UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALARIE JONES, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.:   05-1187 (RMU) |
| | : | |
| THE UNIVERSITY OF THE DISTRICT | : | Document No.:   18 |
| OF COLUMBIA, BOARD OF TRUSTEES | : | |
| OF THE UNIVERSITY OF THE | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
*SUA SPONTE* DISMISSING IN PART THE CLAIMS AGAINST THE DEFENDANT

**I.  INTRODUCTION**

This case is before the court on the defendant's motion for summary judgment. The plaintiff brings this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794,[1] alleging that her employer, the University of the District of Columbia ("UDC"), committed disability discrimination by failing to accommodate her disability. Because the plaintiff failed to exhaust administrative remedies as to ADA claims arising after October 2003, the court dismisses these claims *sua sponte*. Furthermore, because the plaintiff fails to show that she could perform the essential functions of her job with or without reasonable accommodation, the court grants the defendant's motion for summary judgment on her claims under both the ADA and the Rehabilitation Act.

---

[1] The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, are very similar, and "cases interpreting either are applicable and interchangeable." *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)).

## II.  BACKGROUND

The plaintiff alleges the following:  In 1988, the plaintiff began working for the defendant as a police officer.  Am. Compl. ¶ 7.  Between 1999 and 2002, the plaintiff suffered three job-related injuries.  Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 3.  First, in December of 1999, another employee assaulted the plaintiff while on duty.  Def.'s Mot. for Summ. J., Ex. 1 ("Jones Dep.") at 21:11-16.  Second, in April 2001, the employee who assaulted the plaintiff entered an elevator with her causing her to suffer a spasm, faint and injure herself.  Pl.'s Opp'n at 3.  Third, in November 2002, the plaintiff fell while escorting a contractor on the roof of a building.  *Id.* at 3, 98-99.

As a result of these incidents, the plaintiff suffered injuries to her mouth, jaw, face, right shoulder, back, knees and ankle, leaving her with "chronic arthritis in her shoulder, neck and knees, bursitis in her hip, and various chronic back conditions."  Jones Dep. at 27:7-16; Pl.'s Opp'n at 2, 11.  The plaintiff lives in constant pain, Jones Dep. at 168:5-6, and has spasms when walking, sitting, bending and lifting.  Pl.'s Opp'n at 2.  She also suffers from anxiety attacks, but has no idea what triggers them.  Jones Dep. at 334:20-335:12.

After the plaintiff recuperated from the first two work-related injuries, she returned to light-duty status.  *Id.* at 3.  As a result she only did limited patrolling and walking and spent most of her time sitting and supervising communications at the police's base station.  Jones Dep. at 46:6-18; Pl.'s Opp'n at 3.  Because she remained on pain medication, the plaintiff was not allowed to carry a gun.  Jones Dep. at 39:2-10.

But in July 2003, after the third incident (as well as an unrelated gastric bypass surgery), Lieutenant Philip Morton, the plaintiff's supervisor, denied her request for light-duty status.  Pl.'s Opp'n at 5-6; Jones Dep. at 125:1-16.  The plaintiff then called Robert Robinson, the UDC Vice President of Public Safety and Emergency Management, to request light-duty status.  Pl.'s

Opp'n at 6. He informed her that no light-duty positions were available. *Id.* at 133:3-134:14. From July through October 2003, the plaintiff asked several UDC officials to reinstate her to a light-duty position, but these UDC officials informed her that there were still no light-duty positions available and that she could only resume her job once she was at "full capacity." *Id.* at 134:12, 200; Pl.'s Opp'n at 7.

In December 2003, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that the defendant's actions violated the ADA. Def.'s Mot. for Summ. J., Ex. 10 ("EEOC Compl."). She charged that the defendant had failed to accommodate her when she asked to resume her light-duty job from July to October 2003. *Id.* The EEOC determined that the evidence established a violation, and in March 2005, it issued a letter permitting the plaintiff to bring a suit. Pl.'s Opp'n, Ex. 1. The plaintiff filed a complaint with this court in June 2005, alleging discrimination under both the ADA and the Rehabilitation Act.

### III.  ANALYSIS

#### A.  Subject Matter Jurisdiction

When Congress requires the exhaustion of administrative remedies as an antecedent to judicial review, it is "rooted, not in prudential principles, but in Congress' power to control the jurisdiction of federal courts." *Advocados Plus Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004); *accord. Spinelli v. Gross*, 446 F.3d 159, 162 (D.C. Cir. 2006). Thus, before addressing the substantive issues of this case, the court must establish its jurisdiction to adjudicate the plaintiff's claims.

### 1.  Legal Standard to Dismiss *Sua Sponte*

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  "A claim that the court lacks jurisdiction under Article III of the Constitution may not be waived, since the jurisdiction at issue goes to the foundation of the court's power to resolve a case, and the court is obliged to address it *sua sponte*." *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996).  The plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of*

*Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2. The Court Dismisses the Plaintiff's Post-October 2003 ADA Claims *Sua Sponte*

Violations of the ADA must be brought pursuant to Title VII, which requires the plaintiff to exhaust all of her administrative remedies before bringing suit. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (en banc); *Raines v. U.S. Dep't of Justice*, 424 F. Supp. 2d 60, 65 (D.D.C. 2006). Requiring the exhaustion of remedies "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park*, 71 F.3d at 907 (internal quotations omitted). "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (internal quotations omitted).

The Supreme Court has provided guidance in evaluating whether specific discriminatory actions can be joined together to lengthen the statute of limitations on claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Court found that "each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'" *Id.* Accordingly, the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* Circuits are split on how broadly to construe the Supreme Court's holding.

The Eighth Circuit interprets the holding narrowly and continues to use the "reasonably related" test to determine whether a court may review claims not brought before the EEOC

5

without first exhausting administrative remedies. *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 673-74 (8th Cir. 2006). But the Eighth Circuit notes that, in light of *Morgan*, it has "narrowed its view of what acts are sufficiently related to be within the scope of the properly filed administrative charges." *Id.* at 673.

The Tenth Circuit, on the other hand, interprets the Supreme Court's holding broadly. Whereas the Supreme Court's decision barred untimely, but related, incidents occurring prior to the filing of an EEOC complaint, the Tenth Circuit expanded the holding to require exhaustion of remedies for related "incidents occurring *after* the filing of Plaintiff's EEO complaint." *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (concluding that "*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted").

While the D.C. Circuit Court has declined to weigh in on the issue, *Weber v. Battista*, 2007 WL 2033254 at *4 (D.C. Cir. July 17, 2007), three courts in this district have. In two of the cases, the courts found that *Morgan* overruled this circuit's "reasonably related" standard and established a discrete acts framework for determining whether claimants have exhausted their administrative remedies. *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005) (Lamberth, J.); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) (Friedman, J.). In the third case, however, the court limited the holding in *Morgan* to determining the timeliness of a claim, declining to extend the discrete acts framework to the exhaustion of remedies requirement. *Hazel v. Wash. Metro. Area Transit Auth.*, 2006 WL 3623693 at *8 (D.D.C. Dec. 4, 2006) (Roberts, J.). The court drew from a post-*Morgan* D.C. Circuit opinion,

6

which held that a court could not entertain additional incidents omitted from an EEOC complaint unless those incidents were within the "scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination."[2] *Id.* (citing *Lane v. Hilbert*, 2004 WL 1071330 at *1 (D.C. Cir. May 12, 2004) (unreported)).

      Here, even under the more generous reasonably-related test, the court does not have jurisdiction to review the plaintiff's post-October 2003 claims. The plaintiff's EEOC complaint alleges two discriminatory incidents between July 5, 2003 and October 27, 2003 when the defendant denied the plaintiff's request to return to work. EEOC Compl. Notably, the EEOC complaint does not allege ongoing or systematic discriminatory conduct. *See id.* Because the reasonably-related test, if still good law, should be narrowly read after *Morgan*, the court determines that the post-October incidents are not reasonably related to the allegations in the EEOC complaint of discrete discriminatory actions taken within a specified timeframe. *See Parisi v. Boeing Co.*, 400 F.3d 583, 586 (8th Cir. 2005) (barring claims of discrimination that did not appear in the plaintiff's EEOC questionnaire); *see also Shelton v. Boeing Co.*, 399 F.3d 909, 912-13 (8th Cir. 2005) (barring alleged incidents of discrimination that occurred after the end date on the EEOC questionnaire). Accordingly, because the plaintiff has not exhausted her administrative remedies as to her post-October claims, the court lacks jurisdiction and dismisses these claims *sua sponte*.

---

[2]     The court notes that this is the same rationale given by the Eighth Circuit in continuing "to adhere to a narrow reading of [the] exhaustion exception." *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006) (noting that "[w]e do not require that subsequently-filed lawsuits mirror the administrative charges as long as the sweep of any subsequent judicial complaint is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint" (citing *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (internal quotations omitted)).

### 3.  The Court Has Jurisdiction Over the Plaintiff's Rehabilitation Act Claims

Violations of the Rehabilitation Act may be brought pursuant to Title VII or Title VI. While § 791 of the Rehabilitation Act proscribes discrimination by executive agencies and provides remedies set forth in Title VII, which requires a claimant to first exhaust administrative remedies,[3] § 794 of the Rehabilitation Act proscribes discrimination by executive agencies and federally funded entities and provides remedies set forth in Title VI, which does not explicitly require the exhaustion of administrative remedies.[4]  Thus, suits against a federally funded entity must be brought under § 794.  Suits against an executive agency, on the other hand, may be brought via § 791 (requiring exhaustion of administrative remedies) or § 794 (not explicitly requiring exhaustion of remedies).

The D.C. Circuit, in *Taylor v. Small*, harmonized the avenues of relief against executive agencies by concluding that § 794 does not provide a cause of action for suits against executive agencies.  *Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003).  Because § 794 is the exclusive avenue of relief for suits against federally funded entities, the rationale applied by the court in *Taylor* – to harmonize § 791 with § 794 – does not apply here.  *See id.* (reasoning that "because the Congress addressed discrimination against Government employees . . . in [§ 791], it is highly unlikely the Congress meant to address the subject again in [§ 794]").  Accordingly, the court has

---

[3]  *See Webb v. County Bd. Of Educ.*, 471 U.S. 234, 241 (1985) (stating that "Title VII . . . required a plaintiff to pursue available state administrative remedies"); 29 U.S.C. §§ 791, 794a(a)(1).

[4]  *See North Carolina Dep't of Transp. v. Crest St. Comty. Council, Inc.*, 479 U.S. 6, 21 (1986) (asserting that Title VI claimants are "unfettered by a requirement that they exhaust administrative remedies"); 29 U.S.C. §§ 794, 794a(a)(2).

8

jurisdiction over the plaintiff's claims against federally funded entities under § 794 of the Rehabilitation Act.[5]

### B. The Plaintiff's Claims

### 1. Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

---

[5] The court notes other factors weighing in favor of considering the plaintiff's June through October 2003 Rehabilitation Act claims. The acts that form the bases of the plaintiff's ADA claims are the same acts that form the bases of the plaintiff's Rehabilitation Act claims. The plaintiff, therefore, has satisfied even the strict requirements of the Supreme Court's discrete acts framework. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (barring untimely, but related, claims before the EEOC because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'"). Furthermore, the type of claim – employment discrimination – is the same, so the dual goals of notice and narrowing of issues for prompt adjudication are satisfied. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (en banc).

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Green v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Green*, 164 F.3d at 675.

Although EEOC findings may be introduced as evidence, they cannot withstand a motion for summary judgment without additional evidence. *Wright v. Columbia Women & Children's Hosp.*, 34 Fed. App'x 151 (5th Cir. 2002); *Simms v. Okla. ex rel. Dep't. of Mental Health & Substance Abuse*, 165 F.3d 1321, 1331 (10th Cir. 1999), *cert. denied*, 528 U.S. 815 (1999). While the D.C. Circuit has not addressed the matter, the courts of this district have granted summary judgment against the EEOC in cases where the EEOC was a plaintiff. *See*, *e.g.*, *Fennel v. Aetna Life Ins. Co.*, 37 F. Supp. 2d 40 (D.D.C. 1999), *aff'd on other grounds*, 208 F.3d 266 (D.C. Cir. 2000) (finding that the plaintiff was not disabled under the ADA and therefore the EEOC could not bring the claim); *EEOC v. Barton Protective Servs., Inc.*, 47 F. Supp. 2d 57 (D.D.C. 1999) (finding no issue of material fact and granting summary judgment against the EEOC). Accordingly, the court does not defer to EEOC decisions.

**2. Legal Standard for Discrimination Cases**

Discrimination claims based on disability are distinct from other types of discrimination claims because an employer legitimately may consider disability when determining whether an employee is qualified for a particular position. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993) (noting that "while an agency would never admit to basing an employment decision on race, agencies frequently acknowledge that they have taken a person's handicap into consideration"). Accordingly, whether the employer considered disability in taking its action affects the court's analysis. *Id.* In cases where the employer denies that its actions were motivated by the plaintiff's disability, the court applies the McDonnell Douglas burden-shifting framework to a disability-discrimination claim under the Rehabilitation Act. *McGill v. Munoz*, 203 F.3d 843, 845 & n.2 (D.C. Cir. 2000). Alternately, in cases where the employer acknowledges that its actions were motivated by the plaintiff's disability, the court does not apply the McDonnell Douglas framework but instead applies traditional burdens of proof. *Barth*, 2 F.3d at 1186; *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996) (noting that "[t]he McDonnell Douglas burden-shifting approach is unnecessary because the issue of the employer's intent, the issue for which McDonnell Douglas was designed, has been admitted by the defendant"). In such cases, however, the plaintiff still must prove her case of disability discrimination by a preponderance of the evidence. *Barth*, 2 F.3d at 1186.

To establish a prima facie case of discrimination under the Rehabilitation Act, the plaintiff must show that she (1) is an individual with a disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who

suffered an adverse employment decision due to her disability.[6] *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002); *LaCorte v. O'Neill*, 139 F. Supp. 2d 45, 47-48 (D.D.C. 2001) (citing *Barth*, 2 F.3d at 1186).

### 3. The Court Grants the Defendant's Motion for Summary Judgment

The plaintiff lists two charges in her amended complaint. First, she claims that the defendant violated the ADA and the Rehabilitation Act by discriminating against the plaintiff. Am. Compl. ¶ 20. Second, she claims that the defendant violated the ADA and the Rehabilitation Act by denying the plaintiff reasonable accommodations. Am. Compl. ¶ 23. Because a failure to accommodate is a form of discrimination, 42 U.S.C. § 12112(b)(5)(A), and because the elements of both claims are the same, the court consolidates its analysis for the purpose of summary judgment.

---

[6]  The parties' briefs utilize a four-prong test for failure to accommodate claims under both the ADA and the Rehabilitation Act. It is: (1) the plaintiff had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with a reasonable accommodation the plaintiff could have performed the essential functions of the position; and 4) the employer refused to make such accommodations. *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (distinguishing the four-prong test used in claims of failure to accommodate from the three-prong test used above in claims of disparate treatment); *Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 115 (D.D.C. 2007) (applying the four-prong test to both the Rehabilitation Act and the ADA).

The D.C. Circuit has never explicitly adopted the four-prong test, nor has it recognized the distinction between claims of failure to accommodate and claims of disparate treatment. *See Breen v. Dep't of Transp.*, 282 F.3d 839, 840-41 (D.C. Cir. 2002). The court finds no reason to distinguish between the two claims, *see* 42 U.S.C. § 12112(b)(5)(A) (defining failure to make reasonable accommodations as a form of discrimination), and notes that the elements of the two tests are essentially the same. Specifically, the notice requirement of the four-prong test is implied in the three-prong test's requirement of an adverse employment decision due to a disability. *Morisky v. Broward City*, 80 F.3d 445, 448 (11th Cir. 1996) (reasoning that "it is intuitively clear . . . that an employer cannot fire an employee 'because of' a disability unless it knows of the disability"). The notice requirement is also implicitly satisfied due to the requirement under the ADA that a plaintiff exhaust administrative remedies. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988)) (opining that "[t]he administrative charge requirement serves the important purpose[] of giving the charged party notice of the claim").

Assuming *arguendo* that the plaintiff is disabled, the defendant is entitled to summary judgment because the plaintiff fails to show that with or without reasonable accommodation she could perform the essential functions of her position. *Duncan*, 240 F.3d at 1114. To prove this element the plaintiff must show that she can perform the essential functions of the job without an accommodation, or if this is not possible, she may show that she can perform the essential functions of the job with a reasonable accommodation. *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994). To establish that a reasonable accommodation exists, the plaintiff must present evidence as to her individual capabilities and make suggestions for reasonable assistance or job modification. *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991).

### a. The Plaintiff Cannot Perform the Essential Function of Her Job Without Reasonable Accommodations

Until September 2003, the UDC police officer job description required officers to "(1) provid[e] protection services for staff, student's [sic] and visiting personnel, (2) maintain[] security services for buildings, grounds and related material and equipment and (3) assur[e] the safety of those people that may be involved in and or with civil disturbances, riots, sabotage, harassments and or emergencies." Def.'s Mot, Ex. 4. The duties also included: "tak[ing] immediate steps to apprehend and arrest" unauthorized personnel, "administer[ing] first aid," "respond[ing] to and investigat[ing] alarms," "protecting property against damage or defacing during periods of civil disturbance" and "[w]alking, climbing, driving [and] running." *Id.*

In September 2003, the defendant updated its job description for UDC police officers. The new description requires police officers to: "perform law enforcement and crime prevention duties; respond to public safety emergencies, complaints, concerns or questions; preserve and maintain law and order; execute preventive and appropriate procedures for ensuring the protection of persons and properties; patrol University owned and controlled properties on foot;

13

[and] conduct criminal and non-criminal investigations." *Id*. In addition to the pre-September 2003 job description requirements to walk, run, climb and drive, the revised job description specifically states that an officer's duties include "standing for extended periods" and being "outside much of the time." *Id.*

The plaintiff made several requests that the defendant reinstate her as a UDC police officer from July through October 2003. Pl.'s Opp'n at 5, 7. Because the defendant replaced the job description of a UDC police officer in September 2003, the court gives due consideration to both the pre-September 2003 and post-September 2003 job descriptions in determining whether the plaintiff could perform the essential functions of her job. *See* 42 U.S.C. § 12111(8).

Without distinguishing between the two job descriptions, the plaintiff asserts that she is able to perform the "essential functions of a UDC police officer." Pl.'s Opp'n at 13. The plaintiff explains that she "performed limited patrolling by foot and vehicle, issued notices of parking infractions, performed traffic details, escorted staff and students to and from their vehicles, responded to incidents, assisted coworkers with incidents, answered telephones, prepared incident reports, evaluated police equipment, worked in the registration area, and worked in the communications." *Id.* at 13. The defendant counters that the plaintiff is unable to perform the essential public safety functions of her position because she cannot use a firearm, due to her injuries. Def.'s Mot. at 31. Furthermore, the defendant asserts that the plaintiff's inability to patrol and apprehend suspects for the entirety of her shift, coupled with the plaintiff's inability to operate machinery, renders her incapable of performing the essential functions required of her position. *Id.* at 30. The court concurs with the defendant's assessment.

To determine whether a job function is an essential component of a position, the regulations advise that "[t]he function may be essential because the reason the position exists is

14

to perform that function [or] . . . because of the limited number of employees available among whom performance of that job function can be distributed." 29 C.F.R. § 1630(n)(2). Additionally, the court should consider the position for which the plaintiff was hired, not a more limited position that the plaintiff actually performed. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999).

UDC police officers function to protect the public by quickly responding to safety concerns. Def.'s Mot., Ex. 4. Both pre-September 2003 and post-September 2003 job descriptions include running and climbing as duties. *Id.* Yet, the plaintiff can stand for only two hours during her eight-hour shift. Jones Dep. 165:21-22. During these two hours, the plaintiff is unable to run after suspects, tackle suspects or carry a gun, Pl.'s Opp'n at 13; Jones Dep. at 39:4-10; 81:11, 18-21; 165:12-22 (stating that if she needed to chase suspects, she is "not going to get very far"), and is unable to kneel. Pl.'s Opp'n at 2 (stating that "[w]hen she tries to kneel, she falls face down"). For the remaining six hours of her shift, the plaintiff stated only that she can perform communications work. Jones Dep. 162:2-19. Simply being able to do "some traffic detail" and write "some tickets," *id.* at 161:16-18, does not fulfill the "multitude of tasks in a wide range of environments" that the UDC police officer position entails, *Anderson*, 181 F.3d at 1176; *see Martin v. Kansas*, 996 F. Supp. 1282, 1291 (D. Kan. 1998) (determining that a plaintiff with arthritis in his knee could not perform the essential functions of a corrections officer). Consequently, the plaintiff's capabilities are inadequate to perform the essential functions of a UDC police officer without accommodation.

### b. The Plaintiff Cannot Perform the Essential Functions of Her Job Even With Reasonable Accommodations

The plaintiff contends that the defendant must accommodate her disability by placing her on light-duty status or by transferring her to a communications position.[7]  Pl.'s Opp'n at 13. Because the defendant is not required to create a permanent light-duty position and because the plaintiff has not shown that she is eligible for reassignment to a communications position, the plaintiff fails to meet her burden.

The plaintiff asserts that light-duty status constitutes a reasonable accommodation.  Pl.'s Opp'n at 13.  Given the plaintiff's physical limitations, however, the plaintiff is incapable of performing the essential functions of a UDC police officer, even if placed on light-duty status. *See* discussion *supra* Part III.C.1.  Reasonable accommodation does not require an employer to restructure an existing job to remove some of its essential functions.  *Smith v. Blue Cross Blue Shield of Kan., Inc.,* 102 F.3d 1075, 1076 (10th Cir. 1996), *cert. denied,* 522 U.S. 811 (1997). Accordingly, the plaintiff's request for light-duty status is not a request for a reasonable accommodation.  *See Martin v. Kansas*, 190 F.3d 1120, (10th Cir. 1999) (denying relief to a corrections officer who sought a limited rotation on account of a disability).

The court must still address the plaintiff's argument that because she previously worked on light-duty status for three years and because the defendant continues to grant officers light-duty status for extended periods of time, the defendant has created a permanent, light-duty position.[8]  Pl.'s Opp'n at 13.  She presents evidence that Officers Smith,[9] Hodges, Alston and

---

[7]    The plaintiff does not expressly request a reassignment, but the court infers such a request from the plaintiff's assertions that her light-duty work was similar, if not one in the same with, duties performed by a communications specialist.  Jones Dep. at 45:13-19.

[8]    This alleged position would presumably not need to fulfill the essential functions described in the UDC police officer job descriptions.

Royal were all placed on light-duty status. Pl.'s Opp'n, Ex. 9 ("Morton Dep.") at 14; Pl.'s Opp'n, Ex. 8 ("Robinson Dep.") at 11-19. But, nothing indicates that these positions were permanent; to the contrary, the evidence indicates that the defendant permitted light-duty status only when space was available in light-duty areas and only for a finite period of time. Robinson Dep. at 14. Furthermore, the defendant is not obligated to "transform temporary work assignments into permanent positions," and the court will not create a permanent light-duty position where none existed before. *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 696 (7th Cir. 1998). Accordingly, the plaintiff's argument that she is entitled to a permanent light-duty position is unavailing, Pl.'s Opp'n at 3 (conceding that her injury is permanent); Pl's Opp'n at 5 & Ex 11 (proffering doctor's reports stating that her "sedentary work position" . . . "should be made permanent"), and viewing the evidence in the light most favorable to the plaintiff, she fails to raise a genuine issue of material fact as to whether light-duty status is a permanent position.

Alternatively, the plaintiff may request an accommodation in the form of a job transfer. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 415 (2002) (finding that the ADA "prohibits an employer from firing a person whose disability is the cause of his poor performance without first seeking to place him in a vacant job where the disability will not affect performance"). The defendant has a duty to engage in an interactive process with the plaintiff to determine whether there is a job the plaintiff can perform given her limitations. *Aka*, 156 F.3d at 1304 n.27. But the defendant can still prevail on summary judgment despite its failure to engage in the interactive process if the plaintiff fails to show "that a reasonable accommodation was possible and would have led to a reassignment position." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)).

---

[9]     Officer Smith submitted a letter indicating that he was on light duty for five months. Pl.'s Opp'n, Ex. 10.

17

The plaintiff does not assert that there was another position where she could have been transferred as a reasonable accommodation. The plaintiff does, however, indicate that most of her light-duty work was similar to that performed by a communications specialist. Jones Dep. at 45:13-19. Significantly, to be a communications specialist, the plaintiff "must be able to obtain and maintain Special Police Officer (SPO) status through the District of Columbia and meet the prescribed requirements and qualifications associated with SPO status." Def.'s Mot., Ex. 15. The plaintiff presents no evidence indicating that she meets the qualifications of a communications specialist,[10] and she fails to show that the defendant could reassign her to this position.

Having failed to demonstrate either that a light-duty position was available or that she is qualified for a communications specialist position, the plaintiff has not shown that she can perform her job with reasonable accommodations. *See Carr*, 23 F.3d at 529.

## IV.  CONCLUSION

For the foregoing reasons, the court dismisses the plaintiff's post-October 2003 claims *sua sponte* and grants the defendant's motion for summary judgment. An Order consistent with the Memorandum Opinion is separately and contemporaneously issued this 17th day of August 2007.

RICARDO M. URBINA
United States District Judge

---

[10]  The plaintiff does not challenge the qualifications for a communications specialist submitted by the defendant, even though the date on the description, November 24, 2004, is after the plaintiff filed her complaint with the EEOC. Def.'s Mot., Ex. 15.